**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 0:17cv60951**

VAPE FIENDS, INC., a Delaware corporation, VVIG, Inc., a Florida corporation, and AWESOME FLAVORS, LLC, a Florida limited liability company,

Plaintiffs,

v.

LIGHTFIRE GROUP, LLC, d/b/a "LIGHTFIRE DISTRIBUTION, a Florida limited liability company, T&T CONSORTIUM, LLC, d/b/a "VAPE GENIE," a California limited liability Company, VAPE CENTRAL GROUP, LLC, a Florida limited liability company, VAPE LIFE, LLC, a Florida limited liability Company, FRANKLIN KLEINHOLZ, an individual, JAVIER TRIVINO, an individual, and JOHN HAGGAIG. an individual,

Defendants.
_______________________________________/

**COMPLAINT**

Plaintiffs Vape Fiends, Inc., a Delaware corporation (hereinafter "VF"), VVIG, Inc. (hereinafter "VVIG"), a Florida corporation, and Awesome Flavors, LLC, a Florida limited liability company ("AF"), hereby sue Lightfire Group, LLC, d/b/a "Lightfire Distribution" (hereinafter "Lightfire") a Florida limited liability company, T&T Consortium, LLC, d/b/a "Vape Genie," a California limited liability company (hereinafter "T&T"), Vape Central Group, LLC, a Florida limited liability company ("Vape Central"), Vape Life LLC ("Vape Life," and collectively with Lightfire, T&T, and Vape Central the "Corporate Defendants"), Franklin Kleinholz, ("Kleinholz"), Javier Trivino ("Trivino"), and John Haggaig ("Haggaig, collectively with Trivino

and Kleinholz the "Individual Defendants," and the Individual Defendants collectively with the Corporate Defendants, "Defendants") and state:

**INTRODUCTION**

1. Plaintiffs are the owners of the trademarks and other related intellectual property rights with respect to certain vapor liquid products that are marketed to adults in the United States and abroad. Trivino and Kleinholz used to be employed by VVIG and are now employed by Lightfire.

2. When Trivino and Kleinholz left VVIG, they took certain knowhow that was developed by VVIG and owned jointly by VVIG, VF and AF for marketing its products and then Trivino and Kleinholz conspired with Vape Central, John Haggaig, Lightfire and T&T to counterfeit those products and sell the counterfeit products to the general public.

3. This lawsuit seeks appropriate damages against Defendants under the Lanham Trademark Act 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), and also for conspiring to violate Trivino and Kleinholz's agreements with VVIG.

**JURISDICTION AND VENUE**

4. This action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"). Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1338(a) and (b).

5. Venue in this district is proper under 28 U.S.C. § 1391(b).

6. This Court has jurisdiction over the state-law claims asserted in this action pursuant to section 28 U.S.C. 1367(a).

7. This Court has personal jurisdiction over Defendants Kleinholz, Trivino, Haggaig, Lightfire, Vape Central and Vape Life because they each reside in Florida, which is where a

significant portion of their illegal and wrongful conduct took place. This Court has personal jurisdiction over T&T because it has engaged in significant business in Florida, including business that is directly related to the illegal and wrongful conduct that is the subject of this lawsuit.

8. Venue is appropriate in this jurisdiction because the most significant portion of the misconduct that is the subject of this lawsuit took place in this District, two of the Defendants reside in this District and Plaintiffs VVIG and AF reside in this District.

**THE PARTIES**

9. Plaintiff VF is a California corporation that develops and markets products that are related to the e-cigarette industry. Specifically, VF has developed jointly with Plaintiff VVIG, a corporation based in Miami-Dade County, Florida, several brands of e-liquids that are used by devices called "e-cigs." VVIG and VF jointly formed AF, a Florida limited liability company, for the purpose of engaging in joint projects to develop, manufacture and market e-liquids.

10. Defendant Lightfire is a Florida based company that is a competitor to Plaintiffs and is based in Weston, Florida.

11. Vape Central and Vape Life are also competitors to Plaintiffs and they are based in Hallandale, Florida. Vape Life is believed to be the successor entity to Vape Central. Both Vape Central and Vape Life share a common managing member, John Haggaig, who is the principal of both entities.

12. T&T Consortium is a distributor and/or manufacturer in the e-liquid and e-cig industry and is based in California.

13. Kleinholz and Trivino are individual who are believed to reside in Miami-Dade County, Florida. Haggaig is believed to reside in Broward County, Florida.

## GENERAL ALLEGATIONS

14. Working jointly, Plaintiffs have successfully developed, manufactured and marketed flavored “vaping” liquids referred to as “e-liquids” (the “Plaintiffs’ Products”). Plaintiffs have distributed the Plaintiffs’ Products both directly to the general public and also through wholesale distribution chains.

15. Plaintiffs worked jointly to develop the formulas and processes necessary to manufacture the Plaintiffs’ Products using ingredients and methods that Plaintiffs kept strictly confidential.

16. Among the Plaintiffs’ Products are the following distinctly branded e-liquids: Pancake Man, Deluxe Pancake Man, French Dude, Big Cheap Bottle (including the following flavors: Donut, Apple, Strawberry, Gummy, Raspberry, Lemon and Banana), and Unicorn Cakes (hereinafter the “Brands”).

17. Plaintiff VF has registered some of the Brands with the United States Patent and Trademark Office and has conspicuously used all of the Brands in commerce, with the knowledge of all D2efendants, thereby creating enforceable trademarks in each of the Brands (the “Marks”). Documentation with respect to registration with the Patent and Trademark Office of certain Brands attached hereto as Exhibit “A.”

18. The formulas and processes for making the Plaintiffs’ Products, having been developed jointly by VF and VVIG, are owned jointly by VF and VVIG through their jointly owned entity AF.

19. VVIG was the primary manufacturer of the Brands during the period that is relevant to this lawsuit.

20. Generally speaking, VVIG created and manufactured the Plaintiffs' Products in accordance with the respective Product's demand and the supply of ingredients. Rather than hire full time employees to manufacture the Plaintiffs' Products, VVIG often contracts with independent contractors on an as needed basis to assist in the manufacturing process of Plaintiffs' Products. As a result, VVIG's outside contractors will occasionally become privy to Confidential Information.

21. Among the contractors with whom Plaintiff VVIG contracted for the purpose of manufacturing Products were Trivino and Kleinholz. Individual Defendant Trivino provided services for VVIG on an as needed basis between January 1, 2015 and February 26, 2016. Individual Defendant Kleinholz provided services to VVIG between February 5, 2016 and July 14, 2016.

22. The services provided by Trivino and Kleinholz included mixing and manufacturing the Plaintiffs' Products. As a result, Trivino and Kleinholz became familiar with the formulas and methods used to create VVIG's Products, including the Brands.

23. The formulas and methods that VVIG used to manufacture the Plaintiffs' Products were kept strictly confidential by VVIG and the other Plaintiffs. VVIG protected information about the identity and amounts of the ingredients used to formulate the Plaintiffs' Products (the "Confidential Information") from being released to the general public by, among other things, keeping the ingredient lists confidential, password protecting electronic information, and requiring individual involved in the manufacture process to sign "Confidentiality Agreements." Trivino and Kleinholz were each required to execute such Confidentiality Agreements, copies of which are attached hereto as Exhibit "B."

24. The purpose of the Confidentiality Agreements was to protect the valuable business interests of VVIG, VF and AF, all of which have a substantial business interest in keeping the Confidential Information secret.

25. The Confidential Information was expensive to create. It involved the investment of substantial time and resources on the part of Plaintiffs to create and its secrecy has been costly to maintain.

26. The Confidential Information includes formulas, compilations, programs, methods, techniques, and/or processes that: (a) derive independent economic value from not being generally known to, and are not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

27. To the extent the Confidential Information becomes generally known, the value of Plaintiffs' products marketed under the Brands are necessarily substantially reduced.

28. By the end of July of 2016, Trivino and Kleinholz had both stoped providing services to VVIG and instead went to work for Defendant Vape Central, on information and belief, at the urging of John Haggaig.

29. When working for Vape Central, on information and belief, Trivino and Kleinholz communicated the Confidential Information to Vape Central, thereby enabling Vape Central to manufacture a counterfeit version of the Brands.

30. Knowing that Plaintiffs held enforceable trademarks with respect to the Marks and that the Confidential Information provided by Trivino and Kleinholz was owned by Plaintiffs, Haggaig caused his company, Vape Central, to duplicate the formula for the Plaintiffs' Brands and then use the Marks to market them.

31. Defendant Vape Central manufactured counterfeit versions of the Brands (the "Counterfeit Products") in violation of Plaintiffs' various intellectual property rights. On information and belief, Defendant Vape Life continues to manufacture the Counterfeit Products to this day.

32. Among the distribution channels that Vape Central and Vape Life have used to sell the Counterfeit Products were distribution channels owned and/or controlled by Defendants Lightfire and T&T. Lightfire and T&T were well aware that Vape Central was selling fake and unauthorized versions of the Brands, yet they purchased them and distributed them anyway.

33. On information and belief, in part because of its knowing illegal counterfeiting of Plaintiffs' Brands, the principal of Vape Central, John Haggaig, formed Vape Life for the purpose of avoiding liability to Plaintiffs for the stealing of Plaintiffs' intellectual property through Trivino and Kleinholz.

34. Presently, Trivino and Kleinholz are providing e-liquid related manufacturing and/or formulation services to Defendant Lightfire. Therefore, Plaintiffs believe that Lightfire, in addition to Vape Central and Vape Life, have manufactured or intend to manufacture Counterfeit Products using Confidential Information. In any event, Lightfire has sold, and may still be selling, Counterfeit Products, with full knowledge that doing so is illegal.

35. The Counterfeit Products are of the same general appearance as Plaintiffs' Products and are likely to cause confusion among prospective purchasers. Defendants' Counterfeit Products are not authorized by Plaintiffs or by any other authority with a right to so authorize.

36. In fact, Allen Seiden, the principal of Plaintiff VF, had a telephone conversation with a representative from T&T that indicated strongly that T&T was, or should have been, well aware that it was purchasing Counterfeit Products. Specifically, on or about March 21, 2017, Mr.

Seiden had a conversation with Tu Dinh, a principal at T&T, during which the latter indicated that T&T could obtain supplies of Plaintiffs' branded products in the event Plaintiffs did not reduce their price. According to Mr. Dinh, T&T was able to obtain those products at a price more than a third less than the price Plaintiffs charged. When Mr. Seiden asked where T&T would be able to obtain the products at those produce, and questioned their authenticity, T&T refused to share that information. Obviously, T&T knew that the vastly reduced price from the alternative source could be explained only by counterfeiting, and that is exactly why Mr. Dinh refused to identify that source to Mr. Seiden.

37. Furthermore, a representative from T&T represented to at least one other third party that it was obtaining its supplies of products bearing the Brand from Lightfire. So, Plaintiffs have good reason to believe that T&T and Lightfire may have conspired to produce and sell the Counterfeit Products, including by using Plaintiffs' Confidential Information to do so.

38. The Counterfeit Products sold, and to be sold, by Defendants are generally of inferior quality and in irregular quantities. The sale of such Counterfeit Products has injured and is likely to injure the reputations of Plaintiffs, which are highly valuable and been developed by virtue of their honest and ethical business practices.

39. The aforesaid acts by Defendants are likely to cause the purchasing public to believe that the sale of such Counterfeit Products is authorized, sponsored or approved by Plaintiffs and that such Counterfeit Products are subject to the same quality control and regulation required Plaintiffs, despite the fact that this is not true. It also injures Plaintiffs in that Defendants do not have to pay any royalty for their unlawful manufacture and sales.

40. The aforesaid manufacture, distribution and sale of Counterfeit Products bearing the Marks, constitutes a false designation of the source of origin of such goods and falsely

describes and represents such merchandise. The use by Defendants and others of the Marks also constitutes an attempt to palm off and appropriate to themselves the Plaintiffs' exclusive rights therein.

41. Upon information and belief, Defendants and others have and will continue to engage in such unauthorized activities in this state and elsewhere in interstate commerce and are likely to continue such activities into the future, thereby causing great injury to Plaintiffs, both in the form of direct damages in reduced sales and by damaging Plaintiffs' reputations.

42. In fact, on May 4, 2017, Plaintiffs sent the Corporate Defendants a draft complaint containing nearly all of the material allegations set forth herein. Incredibly, by the time of the filing of this lawsuit, only one of them has stated that it will no longer sell or market the Counterfeit Products. And even that entity represented that it would be willing to turn over its inventory of the Counterfeit Products only in exchange for "a proper release," whatever that means.

43. Unfortunately, it is now inescapably apparent that only legal action will convince the Defendants that they must stop violating the law and to respect Plaintiffs' property rights.

44. Plaintiff have no adequate remedy at law and will suffer irreparable harm and damage as a result of the aforesaid acts, in an amount presently incalculable.

45. Plaintiffs have hired counsel for the purpose of asserting the claims set forth herein and have agreed to pay its counsel a reasonable fee.

**COUNT I (Violation of the Lanham Act, Corporate Defendants)**

46. Plaintiffs hereby re-allege the allegations set forth in paragraphs 1 through 45 above as if fully set forth herein.

47. By reason of the foregoing, Plaintiff hereby asserts a claim against the Corporate Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), with regards to the false designation of origin and false descriptions and representations in commerce of Defendants' Products.

**COUNT II (Infringement of Registered Trademark – Corporate Defendants)**

48. Plaintiffs hereby re-allege the allegations set forth in paragraphs 1 through 45 above as if fully set forth herein.

49. By reason of the foregoing, Plaintiffs hereby assert a claim against the Corporate Defendants for injunctive and monetary relief pursuant to 15 U.S.C. § 1114(b) with respect to Defendants' infringement of the registered mark.

**COUNT III (Infringement of Registered Trademark--Haggaig)**

50. Plaintiffs hereby re-allege the allegations set forth in paragraphs 1 through 45 above as if fully set forth herein.

51. By reason of the foregoing, Plaintiffs hereby assert a claim against the Haggaig for injunctive and monetary relief pursuant to 15 U.S.C. § 1114(b) with respect to Defendants' infringement of the Marks.

52. Haggaig knowingly caused entities that he controlled to violate 15 U.S.C. § 1114(b) by, among other things, (i) knowingly hiring Trivino and Kleinholz for the purpose of duplicating the Brands, (ii) copying the Marks, (iii) attempting to copy the formulation of the Brands, (iv) manufacturing the Counterfeit Products, (iv) passing the Counterfeit Products as genuine, and (v) closing Vape Central and then reopening Vape Life in order to try to limit the liability for his wrongdoing.

53. By actively and knowingly causing Vape Central and Vape Life and to engage the aforementioned infringing acts, Haggaig is personally liable for the trade mark infringement of Vape Central and Vape Life.

**COUNT IV (Misappropriation of Trade Secrets – All Defendants)**

54. Plaintiffs hereby re-allege the allegations set forth in paragraphs 1 through 45 above as if fully set forth herein.

55. The Confidential Information meets the definition of "trade secrets" under Florida States § 688.002(4).

56. Defendants misappropriated the trade secrets of Plaintiffs, including the Confidential Information.

57. Plaintiffs took reasonable steps to protect the secrecy of its trade secrets.

58. Plaintiffs' trade secrets were misappropriated by Defendants using improper means and used by them to generate substantial income for themselves to the detriment of Plaintiffs.

**COUNT V (Breach of Contract—Trivino and Kleinholz)**

59. Plaintiffs hereby re-allege the allegations set forth in paragraphs 1 through 45 above as if fully set forth herein.

60. The Confidentiality Agreements are binding contracts with respect to both Trivino and Kleinholz.

61. Trivino and Kleinholz breached the Confidentiality Agreements by providing the Confidential Information to its competitors, including Vape Central and Vape Life, in exchange for compensation.

62. As a result of Trivino and Kleinholz's breach of their respective Confidentiality Agreement, Plaintiffs have been damaged and continue to be damaged to the extent Trivino and Kleinholz continue to violate the Confidentiality Agreement.

**COUNT VI (Tortious Interference with a Contract—
Vape Central, Vape Life, Lightfire and Haggaig)**

63. Plaintiffs hereby re-allege the allegations set forth above in paragraphs 1 through 45 as if fully set forth herein.

64. Defendants Vape Central, Vape Life, Lightfire and Haggaig had actual knowledge of the Confidentiality Agreements between VVIG, on the one hand, and Trivino and Kleinholz on the other.

65. Defendants Vape Central, Vape Life, Lightfire and Haggaig intentionally and unjustifiably interfered with the performance of the duties of Tivino and Kleinholz under their respective Confidentiality Agreement by inducing them to work for Vape Central and Vape Life and provide the Confidential Information to Vape Central and Vape Life.

66. As a result of Trivino and Kleinholz's breaches of their respective Confidentiality Agreement, Defendants have been damaged and continue to be damaged to the extent Trivino, Kleinholz, Vape Central, Vape Life, Lightfire, and or Haggaig, continue to cause Tiviono and Kleinholz to breach their respective Confidentiality Agreement.

**PRAYER'S FOR RELIEF**

WHEREFORE, Plaintiffs VVIG, Inc. and Vape Fiends, Inc. hereby seek relief against Defendants as follows:

A. As to Counts I and II, that Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other judicial districts in the United States, preliminarily during the course of this litigation and permanently from: 1) manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products, merchandise or goods bearing the name, trademark, or likeness of the Brands or any colorable variation or imitation thereof; and 2) representing that any products,

merchandise or goods manufactured, distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiffs in this district or in any other district in which Plaintiffs seeks to enforce this Court's injunction order.

B. As to all claims for relief, that this Court order the United States Marshal, the local and state police or sheriff, off duty officers of the same, authorized agents of Plaintiff, and/or any persons acting under their supervision to seize and impound any and all Counterfeit Products which the Defendants attempt to sell, distribute or hold for sale.

C. That Defendants deliver up for destruction any and all Counterfeit Products.

D. As to all claims for relief, that Defendants pay Plaintiffs damages in an amount to be determined, including compensatory damages, statutory damages, where applicable, and punitive damages to redress Defendants' intentional or grossly negligent misconduct.

E. As to Count V and VI, damages to compensate Plaintiffs for their losses, and an injunction requiring that Defendants immediately stop using the Confidential Information in any way, including, but not limited to, by using recipes that are substantially similar to those in Plaintiffs' Products and Trivino and Kleinholz cease working in the business of formulating or manufacturing vape or e-cig liquids.

F. As to all claims for relief, that Plaintiff be awarded its costs, attorneys' fees and such other and further relief as the Court deems to be appropriate and just.

**Jury Demand**

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Respectfully submitted on May 12, 2017.

MATHEWS GIBERSON, LLP
Museum Plaza
200 S. Andrews Avenue. Ste. 601
Fort Lauderdale, FL 33301
Ph: 305-791-3331
Fax: 954-206-0677

/s/Guy F. Giberson
Guy F. Giberson
Florida Bar No. 627402
Primary E-mail: gfg@mathewsllp.com
Secondary E-mail: sussy@mathewsllp.com